UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KAREN WALKER-JACKSON, an Individual,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SMITH'S FOOD AND DRUG CENTERS, INC., d/b/a SMITH'S FOODS, a Foreign Corporation; DOES 1 through 25, inclusive; and ROE CORPORATIONS 1 through 25, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:21-cv-2066-ART-BNW<br><br>ORDER |

Before the Court is Defendant Smith Food & Drug Centers, Inc. ("Smith's") Motion for Summary Judgment. (ECF No. 26).

Plaintiff Karen Walker-Jackson ("Walker-Jackson") brings claims of sexual harassment, and negligent hiring, training, and supervision against Smith's under Title VII 42 U.S.C. § 2000e *et seq.* and NRS 613.330. (Compl.; ECF No. 1-2). Smith's moves for summary judgment on all claims. Walker-Jackson conceded her retaliation claim in her Response to Smith's Motion for Summary Judgment. (ECF No. 29 at 16). The Court therefore considers Walker-Jackson's sexual harassment and negligent hiring claims.

For the reasons discussed herein, the Court grants-in-part and denies-in-part Smith's Motion.

**I. BACKGROUND**

Walker-Jackson was hired by Smith's in February, 2007. (*Id.* ¶9).

Walker-Jackson began working at Store 319 in July, 2018. (ECF No. 26 at 4). David Robson ("Robson"), a Wine Steward, also worked at Store 319. (*Id.*)

Robson worked in the wine and alcohol section, about four aisles away from

where Walker-Jackson worked, but routinely came near Walker-Jackson's work-area to check out customers' liquor and retrieve expensive liquor from the cabinet located near the checkout registers. (ECF No. 26 at 4). Robson would also "wander around" at the front of the store pushing a shopping cart without an apparent business reason for being at the front of the store. (ECF No. 26-1 Ex. 2 at 56:12-25).[1]

In July 2018, about a week after Walker-Jackson began working at Store 319, Robson began initiating sexual advances towards Walker-Jackson. (ECF No. 1-2 ¶10). Robson called Walker-Jackson "sweet baby angel," an interaction that Walker-Jackson found "creepy." (ECF No. 26 at 5 n.19). Robson repeated these phrases to Walker-Jackson weekly. (*Id.*)

In November or December 2018, Robson touched Walker-Jackson's neck with his finger and said, "I would like to bite you there." (ECF No. 26 at 5 n.21). Walker-Jackson reported Robson's verbal advances and the neck-touching incident to Smith's HR representative Shelia Chapman ("Chapman") that day or the next day. (ECF No. 26-1 Ex. 2 at 40:1-25, 45:9-10). Walker-Jackson asked Chapman to define sexual harassment for her, and subsequently described Robson's conduct to Chapman as sexual harassment. (*Id.* at 40:10-13). Walker-Jackson told Chapman that she wanted the behavior to stop. (*Id.* at 44:1-3). Chapman told Walker-Jackson that Robson was "just creepy Dave," and told Walker-Jackson to "not do anything." (*Id.* at 41:3-9). No report was documented by Smith's Human Resources Department regarding this incident, and no disciplinary action was taken against Robson in response to this complaint. (*Id.* at 40:1-25). According

---

[1] Smith's admits that all statements in Walker-Jackson's deposition are admissible evidence. (*See* ECF No. 26-1 Ex. 1 ¶2 ("Attached hereto as Exhibit 2 is a true and correct copy of the Deposition of Plaintiff taken on December 13, 2022. Any statements therein are admissible evidence. . . .")) Indeed, Smith's admits that all statembents in each of its exhibits to its Motion for Summary Judgment are admissible. (*See id.* ¶¶ 2-10).

to Robert Day ("Day"), Smith's 30(b)(6) witness, reports of sexual harassment made to store managers are not routinely documented at Smith's. (ECF No. 29 Ex. 1 at 33:5-8).

Walker-Jackson sought transfer to another store due to Robson's advances. (ECF Nos. 29 at 8; 26-1 Ex. 2 at 42:12-25). Walker-Jackson told another Smith's employee, Kyle Spicer ("Spicer"), about Robson's advances. (ECF No. 26-1 Ex. 2 at 39:6-15). Spicer told Walker-Jackson he would help her transfer to another store. (*Id.*) On January 13th, 2019, Walker-Jackson transferred from Store 319 to Store 366. (ECF No. 26 at 5 n.27).

On August 4, 2019, Robson also began working at Store 366. (ECF No. 26 at 5). The same day, Robson hugged Walker-Jackson and said "let's let people talk." (ECF No. 26 at 6 n.30). In response, Walker-Jackson said "eww, stop, get away." (*Id.*) Walker-Jackson verbally reported this hug incident to Spicer. (ECF No. 26-1 Ex. 2 at 64:19-25).

Robson immediately resumed his verbal sexual advances towards Walker-Jackson, which occurred almost daily at Store 366. (*Id.* at 66:4). Walker-Jackson reported these verbal advances to three customer service managers on separate occasions. (*Id.* at 66:5-9). Walker-Jackson testified that Smith's customer service managers found Robson's behavior "funny." At least one customer service manager "laughed about it and said; oh, here comes your boyfriend" when Walker-Jackson reported Robson's advances and told the customer service managers she did not like Robson's behavior. (*Id.* at 67:11-16).

On September 21, 2019, Robson asked Walker-Jackson if she was "as single as [I] think you are" or "as single as I want you to be" while bagging groceries for a customer. (ECF Nos. 26 at 5 n.32; 26-1 Ex. 5 at 1; 26-1 Ex. 2 at 69:6-7). Walker-Jackson responded that she was married and showed Robson her wedding ring. (ECF No. 26-1 Ex. 2 at 69:7-8).

On September 26, 2019, Robson grabbed Walker-Jackson and kissed her on

3

the cheek in the checkout area of Store 366. (ECF No. 26-1 at 72:3-14). Later that day, Walker-Jackson told her supervisor, Kathy Dicosta ("Dicosta") about Robson's forceful kiss, and other interactions with Robson. (*Id.* at 82:8-12). Dicosta asked Walker-Jackson if she "yelled at him to stop" when Robson forcibly kissed Walker-Jackson in the checkout area. (*Id* at 82:12-15). Dicosta took Walker-Jackson to see Dicosta's supervisor, Danny Sebron ("Sebron"). Sebron and or Dicosta told Walker-Jackson to write a statement. (ECF No. 26-1 Ex. 2 at 83:16-24; 86:13-20).

On September 26 or 27, 2019, Walker-Jackson submitted a written statement describing her treatment by Robson. (ECF Nos. 26 at 7 n.43; 1-2 ¶17). In it, Walker-Jackson recounts the "single as I think you are" on September 21 and the kiss incident on September 26. (ECF No. 26-1 Ex. 5 at 1). Walker-Jackson noted that she had "told my front-end management about the touching and endearments he does (sweet angel, babygirl) and have now gotten upper management involved." (*Id.*) Walker-Jackson explained that she avoided Robson at work, would only "return to her area when he leaves" and explained that she did "not appreciate or welcome his endearments or his touching my person as I feel threatened." (*Id.* at 2).

On September 27, 2019, Robson walked behind Walker-Jackson in the computer room where offices were in Store 366. (ECF No. 26 at 7 n.39). Robson began massaging Walker-Jackson's shoulders. (*Id.*) Walker-Jackson told Robson to stop touching her, but he continued. (*Id.*) Walker-Jackson stood up, pushing the chair into Robson, and told him to never touch her again. (*Id.*)

On September 30, 2019, Smith's issued a written warning to Robson, which he signed. (ECF No. 26-1 Ex. 6). The "reason for warning" was that Robson "violated the sexual harassment and other forms of harassment policy that was put in place." The warning required Robson to redo training pertaining to the harassment policy and re-read and sign the policy before his next working shift.

(*Id.*) The warning noted that "any further violation pertaining to this policy will result in immediate termination of employment any retaliation towards any employee or employees involved will also result in termination of employment." (*Id.*)

On or around September 30, 2019, Sebron told Robson that Walker-Jackson had been the one who reported his behavior. (ECF No. 26-1 Ex. 2 at 91:21-22). Walker-Jackson understood that her complaint would be anonymous. (*Id.* at 96:23-24). Walker-Jackson reported Robson's behavior to a hotline Smith's provided for reporting sexual harassment after she learned that Robson was not punished beyond a written warning and that Sebron revealed to Robson that Walker-Jackson reported his behavior. (*Id.* at 131:17-25).

Spicer offered to transfer Walker-Jackson to another store. (*Id.* at 96:11-13, 97:13-17). Walker-Jackson refused, perceiving such a transfer to be a punishment. (*Id.*) Spicer offered to move Walker-Jackson to a later shift, but Walker-Jackson refused and inquired why Robson's hours would not be moved instead. (*Id.* at 98:1-12).

On October 8, 2019, Walker-Jackson filed another complaint against Robson with Smith's Human Resources Department. (ECF Nos. 1-2 ¶21; 26-1 Ex. 7). She explained "[s]ince my initial complaint against [Robson] the following issues have been happening since he was told I was his accuser: his presence in or near my work area more often, although no verbal exchange, just walking past me. Also when I have glanced around I've noticed a few times he's been in or around my work area, he's standing there staring (glaring) at me. It's enough that other associates have noticed and have mentioned it. I feel his actions are intimidating and hostile. S.D. Danny [Sebron] addressed [the] issue of him coming on front-end Monday October 7th and I was relieved at the intervention. This is a second written complaint I felt needed to be documented." (ECF No. 26-1 Ex. 7).

Two of Walker-Jackson's coworkers wrote notes to Smith's explaining that

they had "seen David . . . walk past [Walker-Jackson] with a glare" and "walk by her when he didn't need to in a way that seemed like he was trying to intimidate her." (ECF No. 29 Ex. 7).

Walker-Jackson testified that Robson glared at Walker-Jackson while she was working nearly every day in late 2019 and throughout 2020 until Robson was suspended. (ECF No. 26-1 Ex. 2 at 114:21-25). Walker-Jackson verbally reported Robson's glaring and hostile behavior to Spicer twice and Sebron once after submitting her October 8, 2019 complaint. (*Id.* at 117:9-21). When Walker-Jackson verbally reported Robson's behavior to Sebron he yelled at her and asked her what she wanted him to do. (*Id.* at 118:9-14).

Walker-Jackson filed her EEOC Charge in or around November, 2019. (ECF No. 26 at 8). At some point thereafter, Smith's conducted a post-Charge investigation of Robson's behavior. (*Id.*)

On August 31, 2020—nearly eleven months after Walker-Jackson filed her second complaint—Smith's issued Robson a second warning and suspended him. (ECF No. 26-1 Ex. 8). About a week later, on September 9, 2020, Smith's fired Robson. (ECF No. 26-1 Ex. 9).

On July 27, 2021, the Nevada Equal Rights Commission closed Walker-Jackson's complaint and issued a state right-to-sue notice. (ECF No. 26-1 at 10).

Day testified as Smith's FRCP 30(b)(6) witness and described Smith's policy for reporting sexual harassment complaints. Smith's policy does not mandate reporting to Human Resources when an employee at a given store complains. (ECF No. 29 Ex. 1 at 31:19-22). Rather, location managers, personnel directors, and district managers all have discretion to handle complaints on their own or report them to their superiors. (*Id.* at 31:1-32:22). Day testified that reports of sexual harassment made to store managers are not routinely documented, and that Smith's does not have a policy requiring store managers to document complaints of sexual harassment. (*Id.* at 33:5-8). Similarly, Day testified that

Smith's does not have a policy requiring "escalated" complaints to a personnel director to make any written record of the complaint. (*Id.* at 39:20-24).

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[V]ery little evidence [is required] to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the fact finder upon a full record." *Reynaga v. Roseberg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

### III.     DISCUSSION

Smith's argues that Walker-Jackson's negligent hiring, training ,and retention claim fails because employers owe no duty to provide a working environment free from sexual harassment, and that Walker-Jackson's sexual harassment claim fails because Walker-Jackson has not stated facts rising to severe and pervasive harassment and has not shown that Smith's is liable for Robson's conduct. (ECF No. 26 at 2).

The Court finds that Walker-Jackson has presented genuine disputes of material fact as to both her negligent retention claim and her sexual harassment claim. Therefore, the Court denies Smith's Motion for Summary Judgment, (ECF No. 26), as to these claims. As Walker-Jackson has conceded her retaliation claim, (ECF No. 29 at 16), the Court grants Smith's Motion for Summary Judgment (ECF No. 26) as to Walker-Jackson's retaliation claim.

**A. Sexual Harassment**

Title VII and its Nevada state counterpart, NRS 613.330 prohibit sex discrimination in employment. *See* 42 U.S.C. § 2000e *et seq.*; NRS 613.330. Claims for unlawful discrimination under NRS 613.330 are analyzed under the same principles applied to Title VII claims. *See Samuels v. We've Only Just Begun Wedding Chapel, Inc.,* 154 F. Supp. 3d 1087, 1093 (D. Nev. 2015) (citing *Apeceche v. While Pine Co.,* 615 P.2d 975, 977-78 (Nev. 1980)).

"To establish sex discrimination under a hostile work environment theory, a plaintiff must show she was subjected to sex-based harassment that was sufficiently severe or pervasive to alter the conditions of employment, and that her employer is liable for this hostile work environment." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (citing *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 966 (9th Cir. 2001)).

All incidents of harassment must be evaluated together. *See Christian*, 984 F.3d at 809. The Court's obligation is to "'consider all the circumstances,' including those incidents that do not involve verbal communication between the plaintiff and harasser, physical proximity, or physical or sexual touching." *Id.* at 810 (quoting *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1095 (9th Cir. 2008)).

**1. Severe and Pervasive Conduct**

Viewing all the evidence in the light most favorable to Walker-Jackson, the Court concludes that genuine disputes of material fact exist as to the severity or pervasiveness of the harassment.

In evaluating whether conduct is sufficiently severe or pervasive, a court must "consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Davis*, 520 F.3d at 1088). "The required level of severity or seriousness 'varies inversely with the pervasiveness

or frequency of the conduct.'" *Id.* (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).

Here, Walker-Jackson experienced Robson's behavior as an escalating pattern of harassment that began with weekly verbal sexual innuendo and advancements, progressed to nonconsensual touching, and then to forced kissing and nonconsensual massage. Robson's harassment of Walker-Jackson took place over more than two years, at two different stores. Walker-Jackson repeatedly told Robson to stop and otherwise indicated she was not interested in his advances, but he refused to listen. After Smith's issued a written warning to Robson, he began leering and staring at Walker-Jackson in such a way that made her feel threatened, and Walker-Jackson's coworkers agreed that Robson was acting in a way that signaled his intention to intimidate her. The harassment Walker-Jackson endured at both Store 319 and 366 involved the "same type" of conduct, "occurred relatively frequently," and was perpetrated by the same individual. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002).

Based on the facts alleged and construing all evidence in the light most favorable to Walker-Jackson, the evidence is more than sufficient to create a triable issue of fact as to whether Robson's harassment was sufficiently severe or pervasive enough to alter the conditions of Walker-Jackson's employment.

### 2. Employer Liability

Viewing all evidence in the light most favorable to Walker-Jackson, the Court concludes that genuine disputes of material fact exist as to whether Smith's took prompt, appropriate, and effective action to stop Robson's harassment.

"[A]n employer is liable for a hostile work environment created by a plaintiff's co-worker if the employer 'knew, or should have known, about the harassment and failed to take prompt and effective remedial action.'" *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 689 (9th Cir. 2017) (quoting *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010)). "Remedial action must

1  include some form of disciplinary measures . . . which must be "proportionate[]
2  to the seriousness of the offense." *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 882
3  (9th Cir. 1991)). "[T]he employer's corrective measures must be reasonably
4  calculated to end the harassment; the reasonableness of the corrective action will
5  depend on, *inter alia,* the employer's ability to stop the harassment and the
6  promptness of the response." *Christian*, 984 F.3d at 811-12 (quoting *Freitag v.*
7  *Ayers,* 468 F.3d 528, 539-40 9th Cir. 2006) *as amended* (Nov. 3, 2006)).
8  "Effectiveness is measured not only by ending the current harassment but also
9  by 'deterring future harassment—by the same offender or others. If 1) no remedy
10 is undertaken, or 2) the remedy attempted is ineffectual, liability will attach." *Id.*
11 (quoting *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1528-29 (9th Cir. 1995)).

12 Whether Smith's took prompt, appropriate, and effective action presents a
13 genuine issue of material fact. When Walker-Jackson complained about Robson's
14 behavior at Store 319, she was rebuffed and told not to do anything. Robson's
15 behavior was clearly known to Smith's because its Human Resources
16 representative had a nickname for him—"Creepy Dave." Once Robson's behavior
17 escalated to forced kissing at Store 366, Smith's issued a warning that required
18 him to read the relevant harassment policies before his next shift. After receiving
19 this warning, Robson attempted to intimidate Walker-Jackson by standing near
20 her workstation and staring at her nearly every day between late-September
21 2019, and his suspension in late-August 2020. Robson's behavior was noticeable
22 and concerning to multiple other Smith's employees, whose notes confirming his
23 behavior are in the record. Despite written and verbal complaints to various
24 supervisors at multiple levels by Walker-Jackson, Smith's did not investigate or
25 otherwise discipline Robson for nearly a year after he began staring at Walker-
26 Jackson in September 2019. A reasonable factfinder could find Smith's action of
27 issuing a written warning to Robson ineffective because Robson did not elect to
28 cease his harassment of Walker-Jackson but merely modified it from unwanted

11

touching and verbal advances to leering. *See Christian*, 984 F.3d at 813; *Fuller*, 47 F.3d at 1529.

Further, a jury could find that Smith's eventual suspension and firing of Robson—occurring more than two years after Robson's verbal harassment initially began—was "too little too late." *Id.* (citing *Fuller*, 47 F.3d at 1528 (remedy must be prompt); *Freitag*, 468 F.3d at 540 (same)).

Finally, a jury could also find that Smith's response of offering Walker-Jackson a transfer from Store 366 to another store or changing her work hours unreasonably burdened Walker-Jackson. *See Christian*, 984 F.3d at 813 (citing *Intlekofer v. Turnage*, 973 F.2d 773, 780 n.9 (9th Cir. 1992) ("[H]arassment is to be remedied through actions targeted at the *harasser*, not at the victim.")). "[A] victim of sexual harassment should not have to work in a less desirable location as a result of an employer's remedy for sexual harassment." *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)).

"Because gender-based harassment threatens the ability of its victims to thrive in the workplace, employers must act promptly to remedy its effects and prevent its recurrence." *Christian*, 984 F.3d at 814. Here, genuine issues of material fact exist as to both whether Robson's harassment was sufficiently severe or pervasive to alter the conditions of Walker-Jackson's work environment, and as to whether Smith's met its burden to stop Robson's harassment and prevent it from recurring.

Therefore, the Court denies Smith's Motion for Summary Judgment as to Walker-Jackson's harassment claim. (ECF No. 26).

**B. Negligent Hiring and Retention**

Walker-Jackson alleges that Smith's was negligent in its supervision and retention of Robson.

Nevada recognizes the tort of negligent hiring, training, supervision, and retention. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). "To state a claim for

negligent training and supervision in Nevada, [Walker-Jackson] must show '(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation.'" *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) (quoting *Reece v. Rep. Servs., Inc.*, 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011)). "In Nevada, an employer 'has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure the employees are fit for their positions.'" *Blanck v. Hager*, 360 F.Supp.2d 1137, 1157 (D. Nev. 2005) (quoting *Hall*, 930 P.2d at 99). "Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a jury." *Okeke*, 927 F. Supp. 2d at 1028 (quoting *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 168 P.3d 1055, 1065 (2007)). Although the Nevada Supreme Court has not yet decided the question, several courts have concluded that physical harm is not necessary to state a claim for negligent hiring and supervision in Nevada, and this Court agrees. *See Ramirez v. Wynn Las Vegas, LLC*, 2022 WL 3715751 at *11 (D. Nev. Aug. 29, 2022); *see also Chocolate Magic Las Vegas LLC v. Ford*, 2018 WL473006 at *2-*3 (D. Nev. Jan. 17, 2018); *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264 (Nev. 2014); *Russo v. Shac, LLC*, 2021 WL 5370814 at *9 (Ct. App. Nev. Nov. 17, 2021).

Here, the Court finds that there is a genuine dispute of material fact as to whether Smith's negligently supervised and retained Robson. Walker-Jackson argues that Smith's negligently supervised and retained Robson when he began staring at Walker-Jackson after Smith's issued its initial written warning to Robson. (ECF No. 29 at 15-16).

A reasonable jury could find that Smith's negligently supervised and retained Robson after Smith's issuance of the first written warning to Robson, which included language indicating that any retaliation would result in immediate termination. Subsequently, Walker-Jackson made numerous written and verbal

complaints to managers at Smith's that Robson was attempting to intimidate her through near-daily staring. Robson's behavior was severe enough that both Walker-Jackson and other employees at Smith's perceived it as threatening. And, Smith's did not issue Robson another written warning for about eleven months after the first written warning which indicated that termination would result from any retaliation.

Walker-Jackson argues that Smith's had a duty to use reasonable care in the supervision and retention of employees. Viewing the evidence in the light most favorable to her, Walker-Jackson has raised a genuine dispute over whether Smith's breached its duty to do so. Therefore, the Court denies Smith's Motion for Summary Judgment as to Walker-Jackson's negligent retention claim. (ECF No. 26).

**IV. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

The Court further notes that, having undertaken a detailed review of the record, no oral argument is required on Defendant's Motion for Summary Judgment. (ECF No. 26).

//
//
//
//
//
//
//
//

It is ordered that Smith's Motion for Summary Judgment (ECF No. 26) is granted-in-part and denied-in-part as follows: (1) Smith's Motion for Summary Judgment is granted as to Walker-Jackson's retaliation claim; (2) Smith's Motion for Summary Judgment is denied as to Walker-Jackson's sexual harassment and negligent retention and supervision claims.

It is so ordered.

DATED THIS 23rd day of May 2023.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE